IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAVIAD AKHTAR,

        Plaintiff,                    No. 2:09-cv-2733 MCE AC P

    vs.

J. MESA, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a California state prisoner seeking relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss the second amended complaint. ECF No. 55. This matter came on for hearing before the undersigned on April 17, 2013. Certified Law Students Islam Ahmad and Daniel Tu of the King Hall Civil Rights Clinic appeared on behalf of the plaintiff, with Supervising Attorney Carter White. Deputy Attorney General Diana Esquivel appeared on behalf of defendants Mesa and Turner.

        Second Amended Complaint

        This case is before the court following remand from the Ninth Circuit. See Akhtar v. Mesa, 698 F.3d 1202 (9th Cir. 2012). The second amended complaint, filed by counsel after remand, names three current or former Mule Creek State Prison correctional

1

1  personnel as defendants: Correctional Officer Mesa, Correctional Sergeant Turner, and
2  Correctional Lieutenant Ward.  ECF No. 53.

3　　　　　Plaintiff, a Pakistani national with very limited proficiency in English, suffers
4  from numerous serious medical conditions including chronic kidney disease, traumatic brain
5  injury, a spinal disc hernia, incontinence, coronary artery disease, hypertension, high cholesterol,
6  and a history of seizures, stroke, and epilepsy.  Plaintiff's mobility is impaired, and he uses a
7  walker and a cane.  He wears a special vest identifying him as hearing-impaired.  He wears
8  special shoes for medical reasons and uses a medically-required double mattress.  Because of his
9  incontinence, plaintiff requires ready access to a toilet.

10　　　　　On August 17, 2006, plaintiff was issued a Disability Placement Program
11  Verification ("DPPV"), stating that he was mobility-impaired due to a permanent disability, and
12  subject to housing restrictions of a lower bunk, no stairs, and no triple bunk.  On October 8,
13  2008, plaintiff was issued a chrono specifying that he was to be permanently housed in a ground
14  floor cell, bottom bunk.  On December 2, 2008, defendant Mesa, Building Officer in "B"
15  Facility, told plaintiff that he was being moved from his cell to an emergency bunk ("E-bed") in
16  open dormitory housing, which had forty E-beds but only two toilets and one urinal.  Plaintiff
17  told defendant Mesa that he had a medical chrono showing he was to be housed in a ground floor
18  *cell*, and objected to the move on safety and medical grounds.  Mesa nonetheless insisted on
19  moving plaintiff, who then said he would rather go to administrative segregation (ad seg) than to
20  the open dormitory.  Plaintiff was taken to a holding area and informed by Sgt. Turner that he
21  was being moved to the dormitory.  When plaintiff showed defendant Turner his medical chrono,
22  Turner stated, "I don't care" and told plaintiff he would be sent to ad seg and written up for
23  disobeying a direct order.  Plaintiff was charged with a rules violation (known as a CDC 115,
24  after the rules violation report form) and confined in ad seg for a week.  He was issued a second
25  rules violation report for his continued refusal to move, and then was moved to a triple bunk in
26  the open dorm setting.

In the open dormitory plaintiff did not have the medically necessary sleeping accommodations. His bed on the bottom of the triple-bunk was higher and narrower than the bunk in his cell, the vertical space between the beds was smaller, and it was open on both sides rather than one. The bunk lacked the double mattress that plaintiff required for accommodation of his disability. As a result of these deficiencies, plaintiff fell from his bed and broke his wrist. His bunk was also 75 feet away from the nearest urinal. Because this distance made it difficult for plaintiff to access the urinal, he repeatedly urinated in his clothing. As a result plaintiff suffered humiliation, anxiety and emotional distress. His access to necessary medication was also impaired in the dorm because of the misconduct of other inmates, who repeatedly moved and sometimes stole his personal property.[1]

The second amended complaint sets forth three causes of action: (1) deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment; (2) deliberate indifference to plaintiff's right to safe and adequate shelter, i.e. failure to protect; and (3) and supervisory liability solely as to defendant Lt. Ward.[2] Plaintiff seeks money damages. See Second Amended Complaint (ECF No. 53).

Motion to Dismiss

Defendants move for dismissal under Fed. R. Civ. 12(b)(6) on the ground that plaintiff has not alleged facts sufficient to state a cognizable claim under 42 U.S.C. § 1983. Defendants also contend that they are entitled to qualified immunity. ECF No. 55 at 1, 5-10.

*Legal Standard for Motion to Dismiss under Fed, R. Civ. P. 12(b)(6)*

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

---

[1] Plaintiff occasionally requires immediate access to nitroglycerin for severe chest pain. Prison officials therefore permitted him to keep his medication in his walker. In the open dorm, other inmates removed plaintiff's walker from the area around his bunk and sometimes hid the walker.

[2] Defendant Ward was the supervising officer who authorized the move. He died before being served. See ECF No. 54.

3

1  a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"
2  it must contain factual allegations sufficient to "raise a right to relief above the speculative
3  level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The pleading must contain
4  something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally
5  cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and
6  Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual
7  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,
8  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility
9  when the plaintiff pleads factual content that allows the court to draw the reasonable inference
10 that the defendant is liable for the misconduct alleged." Id.

11          In considering a motion to dismiss, the court must accept as true the allegations of
12 the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740
13 (1976), construe the pleading in the light most favorable to the party opposing the motion and
14 resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied,
15 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific
16 facts that are necessary to support the claim.'" National Organization for Women, Inc. v.
17 Scheidler, 510 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561
18 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by
19 lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

20          The court may consider facts established by exhibits attached to the complaint.
21 Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also
22 consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d
23 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other
24 papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.
25 1986). The court need not accept legal conclusions "cast in the form of factual allegations."
26 Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

*Analysis*

    A.    First Cause of Action

        1.    *Eighth Amendment Standards for Inadequate Medical Care*

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a demanding standard for "deliberate indifference." Negligence is insufficient. Farmer, 511 U.S. at 835. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Id. at 836-37. It not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842. Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted).

A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

2. *Law of the Case*

Defendants Mesa and Turner argue that the allegations against them are insufficient to state an Eighth Amendment claim, because their actions in initiating plaintiff's move to the dormitory were not the cause of the claimed constitutional deprivation. The Ninth Circuit considered and rejected this argument on appeal from the previous dismissal:

> Akhtar's first amended complaint set forth sufficient facts to show that he had a serious medical need. . . .
>
> Akhtar's first amended complaint also set forth sufficient facts to show that Appellees were deliberately indifferent. Akhtar alleged that he showed his medical chrono requiring a lower bunk in a ground-floor cell to Officer Mesa and Sergeant Turner. He also alleged that they ignored the medical chrono by moving him to an E-bunk in the dayroom.
>
> Akhtar also alleged that he was harmed as a result of Appellees' failure to comply with his chrono. He alleged that he suffered a broken wrist. He also suffered humiliation and embarrassment on several occasions because he urinated in his clothes.
> . . .
>
> His allegations of deliberate indifference to his medical condition were sufficient to satisfy the pleading requirement. To the extent Appellees contest Akhtar's ability to *prove* harm, that is an issue for summary judgment or trial, not a Rule 12(b)(6) motion to dismiss.

Akhtar v. Mesa, 698 F.3d at 1213-1214 (emphasis in original).

Once a decision of law is made, it becomes the "law of the case," and absent clear error or changed circumstances should not be changed. See United States v. Estrada-Lucas, 651 F.2d 1261, 1263-64 (9th Cir.1980). Under the law of the case doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." Richardson v. United States, 841 F.2d 993, 996 (9th Cir.), amended, 860 F.2d 357 (9th Cir.1988); see also, Jeffries v. Wood, 114 F.3d 1484, 1488-89 (9th Cir.1997) (en banc). The doctrine holds particular force in the remand context. "Under the law of the case doctrine a decision of the court in a prior appeal must be followed in all subsequent proceedings in the same case." Eichman v. Fotomat Corp., 880 F.2d 149, 157 (9th Cir. 1989). "Lower courts are

6

free to decide issues on remand *so long as they were not decided on a prior appeal*." Liberty Mut. Ins. Co. v. E.E.O.C., 691 F.2d 438, 441 (9th Cir. 1982) (emphasis added).  Here, the Ninth Circuit decided on prior appeal that the allegations against Mesa and Turner are sufficient to state a claim.  That is the law of the case, which this court is not free to disregard.

Defendants contend that the law of the case doctrine does not preclude dismissal, because the allegations of the second amended complaint are materially different from those held sufficient by the Ninth Circuit.  Defendants argue here, as they did in the Ninth Circuit, that Mesa and Turner were involved only in plaintiff's removal from his cell and initial placement in ad seg, and were not responsible for his ultimate placement several days later in the open dormitory.  At hearing on the instant motion, counsel for defendants emphasized that the second amended complaint acknowledges, for the first time, a break in time of approximately a week between Mesa's and Turner's actions and plaintiff's placement in the E-bed.[3]  According to defendants, this break in time makes absolutely clear that Mesa and Turner did not cause the alleged constitutional violation.[4]  However, the delay between the defendants' actions of December 2, 2008 and plaintiff's placement in the dayroom E-bed was not alleged for the first time post-remand.  The initial and first amended pro se complaints both indicated that plaintiff spent at least several days in ad-seg prior to being moved to the dorm.  Documentation attached to the initial complaint established that plaintiff received two rules violation reports a week

---

[3] The second amended complaint uses the phrase "later that week" to describe the second CDC 115 in relation to the first CDC 115. ECF No. 53 at 4:21. Previous iterations of the claim had not used that phrase.

[4] This was also defendants' theory on appeal. See 698 F.3d at 1213 ("On appeal, Appellees focus on Akhtar's alleged failure to show 'a causal relationship between Appellees and any supposed violation of his constitutional rights.'"). See also Defendants-Appellees' Answering Brief, USCA No. 11-16629, ECF No. 19-1 at 27-29 (arguing that neither appellee personally housed plaintiff in an E-bunk, and that the allegations therefore failed to show a causal relationship between appellees and any violation of plaintiff's rights).

7

apart, on December 2 and December 9, 2008, before being moved to the E-bed.[5] The Ninth Circuit was well aware of this chronology. See Akhtar, 698 F.3d at 1206 (reciting dates of rules violation reports). Accordingly, the second amended complaint does not contain materially different allegations from those previously presented to this court and to the Ninth Circuit.

Defendants also contend that the Ninth Circuit's decision resulted from application of the lenient pleading standards applicable to pro se prisoners, see Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc), which no longer apply because plaintiff is now represented by counsel. The argument is unpersuasive. The Ninth Circuit explicitly relied on the fact of plaintiff's former pro se status in criticizing this court's handling of the administrative exhaustion issue (particularly our failure to consider material submitted for the first time in objection to findings and recommendations) and dismissal with prejudice and without adequate notification of the complaint's supposed deficiencies. Akhtar, 698 F.3d at 1208-09, 1214-15. Those standards were not invoked as a basis for the ruling on the sufficiency of the Eighth Amendment claim, however. See id. at 1213-14. Absent a clear statement by the court of appeals that the claim passed Rule 12(b)(6) scrutiny only because an otherwise deficient claim was presented by an unrepresented plaintiff, the involvement of the Civil Rights Clinic will not defeat application of the law of the case doctrine.

The Court of Appeals concluded that the allegations against Mesa and Turner are sufficient to survive a facial challenge, presumably on the theory that Mesa and Turner initiated the allegedly unconstitutional change in conditions.[6] The question is not whether this court agrees with that analysis, but whether this court may revisit the question on remand. For the reasons explained above, the undersigned concludes it may not.

---

[5] See ECF No. 1, pp. 14-20.

[6] The opinion does not make this theory explicit, but it is the most reasonable way to reconcile the panel's recognition of the underlying facts with the characterization that defendants Mesa and Turner "mov[ed] [plaintiff] to an E-bunk in the dayroom." 698 F.3d at 1214.

8

B. <u>Second Cause of Action</u>

1. *Eighth Amendment Standards for Unsafe Conditions of Confinement and Failure to Protect*

The Eighth Amendment guarantees humane conditions of confinement, and prison officials may be liable for deliberate indifference to an excessive risk to inmate health or safety. <u>Farmer v. Brennan</u>, 511 U.S. at 837. "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000). Deprivations serious enough to violate the Eighth Amendment are those "denying the minimal civilized measure of life's necessities." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). When an inmate has been deprived of necessities, "the circumstances, nature and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred." <u>Johnson</u>, <u>supra</u>, at 731. "'[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment.'" <u>Id.</u> (quoting <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1314, as amended, 75 F.3d 448 (9th Cir. 1995)).

Prison officials are also constitutionally obligated to ensure the safety of inmates. <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-527 (1984)). A claim based on failure to prevent harm, like all Eighth Amendment claims, requires both an objectively serious deprivation or risk and deliberate indifference to inmate health or safety. <u>Farmer,</u> 511 U.S. at 834. A prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837.

////

////

////

9

### 2.   *Sufficiency of Claim*

Defendants challenge the Second Cause of Action on the same grounds as the First: they argue that the allegations do not support a causal connection between Mesa's and Turner's initial attempts to move plaintiff to the dayroom E-bed and any alleged constitutional deprivation. At oral argument, counsel for defendants argued that even if the Ninth Circuit's disposition of the prior appeal is binding as to the sufficiency of the First Cause of Action, it has no application to the newly-added Second Cause of Action. The court disagrees.

Plaintiff's allegations regarding conditions in the dayroom, in light of his physical condition, clearly set forth sufficient facts to show an objectively serious risk to plaintiff's safety. The real question is whether the allegations regarding deliberate indifference and causation are sufficient to state an Eighth Amendment claim.

The allegations relevant to the defendants' deliberately indifferent state of mind, and their responsibility for plaintiff's exposure to the dangerous conditions, are the same allegations that the Ninth Circuit found sufficient to show deliberate indifference and causation as to the inadequate medical care claim. The First and Second Causes of Action present different Eighth Amendment theories, but the deliberate indifference standard and causation requirement are the same. If plaintiff's allegations are sufficient to support the medical care claim, which the Ninth Circuit has said they are, then they necessarily are sufficient to support the unsafe conditions/failure to protect claim. The motion to dismiss for failure to state a claim as to the second cause of action should be denied.

### C.   *Qualified Immunity*

In resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officers' actions violated a constitutional right, and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed. Anderson v. Creighton, 483 U.S. 635 (1987). These questions may be

addressed in the order that makes the most sense given the circumstances of the case. Pearson v. Callahan, 555 U.S. 223 (2009).

Defendants contend first that plaintiff's allegations do not demonstrate that there was any constitutional violation. This argument fails for the reasons already explained. When the allegations are taken in the light most favorable to plaintiff, he was placed in a housing environment that was patently inconsistent with his serious medical needs and that posed an obvious risk to his health, safety and sanitation needs. A prisoner's right to be free from deliberate indifference to his/her serious medical needs, and to physically safe and sanitary conditions, has long been clearly established. See, e.g., Estelle v. Gamble, 429 U.S. at 104-05; Farmer v. Brennan, 511 U.S. at 837.

Defendants argue further that they are entitled to qualified immunity because they were merely following orders to move plaintiff, and were entitled to rely on their superiors' judgment that the move comported with plaintiff's medical needs and with the law. The "just following orders" defense does "not occup[y] a respected position in our jurisprudence.'" Kennedy v. City of Cincinnati, 595 F.3d 327, 337 (6th Cir. 2010) (quoting O'Rourke v. Hayes, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004)); Thaddeus-X v. Blatter, 175 F.3d 378, 393 (6th Cir. 1999) (en banc) (collecting cases). Instead, "officials have an obligation to follow the Constitution even in the midst of a contrary directive from a superior or in a policy." Kennedy, 595 F.3d at 337 (internal quotation marks omitted). This principle is so longstanding that in an 1804 opinion by Chief Justice Marshall, the Supreme Court upheld a damages award against the commander of an American warship for unlawfully seizing a Danish vessel, even though the seizure was made pursuant to a superior's instructions. See Little v. Barreme, 6 U.S. (2 Cranch) 170, 178-79 (1804) (Marshall, C.J.); Busche v. Burkee, 649 F.2d 509, 517 (7th Cir. 1981) (discussing Little). In light of these principles, the Ninth Circuit denies qualified immunity to state actors who rely on directives that contradict clearly established constitutional safeguards. See Cal. Att'ys for Criminal Justice v. Butts, 195 F.3d 1039, 1049-50 (9th Cir. 1999).

It may be that on a more developed record, defendants will be able to establish that the circumstances were such that they reasonable believed their actions to be lawful. Given the present procedural posture of the case, however, the court must assume that Mesa and Turner were presented with evidence (in the form of plaintiff's medical chrono and explanations) that the order was improper. Accordingly, it should have been apparent to them that removing plaintiff from his cell for placement in an E-bed would subject him to unconstitutional conditions. Because plaintiff has demonstrated that the right at issue was clearly established, and defendants have not yet proven that they reasonably believed the conduct was lawful, the motion to dismiss under Rule 12(b)(6) on qualified immunity grounds should be denied.

Accordingly, IT IS RECOMMENDED that:

1. The motion to dismiss (ECF No. 55), filed on February 22, 2013, be denied: and

2. Defendants be ordered to file an answer within thirty days of date of the order adopting these findings and recommendations if that occurs.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 24, 2013.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:009akht2733.mtd