1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAVIAD AKHTAR,                              No.  2:09-cv-2733 MCE AC P

12              Plaintiff,

13        v.                                     FINDINGS AND RECOMMENDATION

14   J. MESA, et al.,

15              Defendant.

16

17        Pending before the court is plaintiff's motion to amend the complaint, ECF No. 90.  The

18   court held a hearing on this matter on April 2, 2014.  Carter White and certified law students

19   Charlie Chinn and Jaweon Lee, all of the University of California at Davis King Hall Civil Rights

20   Clinic, appeared for plaintiff.  Deputy Attorney General Diana Esquivel appeared for the

21   defendants.  Supplemental briefs were submitted after the hearing at the court's direction.  Upon

22   review of the motion and the supporting documents, and good cause appearing, THE COURT

23   FINDS AS FOLLOWS:

24                          FACTUAL AND PROCEDURAL BACKGROUND

25        Plaintiff is a state prisoner seeking relief pursuant to 42 U.S. § 1983.  The initial complaint

26   was filed in pro per on October 1, 2009, and an amended complaint was filed on May 12, 2010

27   and subsequently served on defendants Mesa, Turner and Ward.  The action was dismissed for

28   administrative non-exhaustion on April 7, 2011.  ECF Nos. 27, 31.  The King Hall Civil Rights

1

1 Clinic entered the case for the first time to bring an unsuccessful motion to amend the judgment,

2 and thereafter represented plaintiff on appeal. The Ninth Circuit reversed and remanded the case

3 on November 28, 2012. ECF No. 46 (mandate).

4      *Second Amended Complaint*

5      On remand, plaintiff filed a second amended complaint that stated three causes of action

6 against Mule Creek State Prison correctional personnel Mesa, Turner and Ward: (1) deliberate

7 indifference to plaintiff's serious medical needs in violation of the Eighth Amendment; (2)

8 deliberate indifference to plaintiff's right to safe and adequate shelter, i.e., failure to protect; and

9 (3) and supervisory liability as to Lt. Ward. ECF No. 53. The second amended complaint

10 survived a motion to dismiss for failure to state a claim, ECF Nos. 60, 67, and plaintiff was

11 permitted to substitute a successor-in-interest for deceased defendant Ward, ECF Nos. 71, 77.

12      The second amended complaint (SAC) alleges in sum as follows: Plaintiff is a Pakistani

13 national with very limited proficiency in English, who suffers from numerous serious medical

14 conditions including chronic kidney disease, traumatic brain injury, a spinal disc hernia,

15 incontinence, coronary artery disease, hypertension, high cholesterol, and a history of seizures,

16 stroke, and epilepsy. Plaintiff's mobility is impaired, and he uses a walker and a cane. He wears

17 a special vest identifying him as hearing-impaired. He wears special shoes for medical reasons

18 and uses a medically-required double mattress. Because of his incontinence, plaintiff requires

19 ready access to a toilet.

20      On August 17, 2006, plaintiff was issued a Disability Placement Program Verification

21 ("DPPV"), stating that he was mobility-impaired due to a permanent disability, and subject to

22 housing restrictions of a lower bunk, no stairs, and no triple bunk. On October 8, 2008, plaintiff

23 was issued an accommodation chrono specifying that he was to be permanently housed in a

24 ground floor cell, bottom bunk. On December 2, 2008, defendant Mesa, Building Officer in "B"

25 Facility, told plaintiff that he was being moved from his cell to an emergency bunk ("E-bed") in

26 open dormitory housing, which had forty E-beds but only two toilets and one urinal. Plaintiff told

27 defendant Mesa that he had a medical chrono showing he was to be housed in a ground floor cell,

28 and objected to the move on safety and medical grounds. Mesa nonetheless insisted on moving

2

plaintiff, who then said he would rather go to administrative segregation (ad seg) than to the open dormitory.  Plaintiff was taken to a holding area and informed by Sgt. Turner that he was being moved to the dormitory.  When plaintiff showed defendant Turner his medical chrono, Turner stated, "I don't care" and told plaintiff he would be sent to ad seg and written up for disobeying a direct order.  Plaintiff was charged with a rules violation (known as a CDC 115, after the rules violation report form) and confined in ad seg for a week.  He was issued a second rules violation report for his continued refusal to move, and then was moved to a triple bunk in the open dorm setting.

In the open dormitory plaintiff did not have the medically necessary sleeping accommodations.  His bed on the bottom of the triple-bunk was higher and narrower than the bunk in his cell, the vertical space between the beds was smaller, and it was open on both sides rather than one.  The bunk lacked the double mattress that plaintiff required for accommodation of his disability.  As a result of these deficiencies, plaintiff fell from his bed and broke his wrist.  His bunk was also 75 feet away from the nearest urinal.  Because this distance made it difficult for plaintiff to access the urinal, he repeatedly urinated in his clothing.  As a result plaintiff suffered humiliation, anxiety and emotional distress.  His access to necessary medication was also impaired in the dorm because of the misconduct of other inmates, who repeatedly moved and sometimes stole his personal property.  Plaintiff seeks money damages.  SAC, ECF No. 53.

*Proposed Third Amended Complaint*

Plaintiff moves to amend, seeking to add nine new defendants, continue against the three successors-in-interest to defendant Ward,[1] and dismiss defendants Turner and Mesa.  Motion to Amend (MTA), ECF No. 90 at 3; Proposed Third Amended Complaint (TAC), ECF No. 90-1.  The TAC sets forth four causes of action: (1) violation of the Eighth Amendment by deliberate indifference to plaintiff's medical care; (2) violation of the Eighth Amendment by deliberate indifference to plaintiff's right to safe and adequate shelter; (3) custodial supervisory liability

---

[1] Defendant Ward died during the pendency of this action.  See ECF Nos. 61 (Motion to Substitute Successor-In-Interest For Deceased Party), 71 (Order granting motion), 76 (Notice of Substitution of Defendant), 77 (Order granting substitution).

1  under § 1983 for acts of subordinate custodial staff; (4) medical supervisory liability under § 1983

2  for acts of subordinate health care staff.  See TAC, ECF No. 90-1.

3    The nine proposed new defendants are: (1) Correctional Lieutenant Rogel, who ordered

4  plaintiff released from ad-seg to a triple-bunk E-bed; (2) Facility Captain L. Olivas, who included

5  plaintiff in a list of inmates eligible for E-beds and later denied an appeal of plaintiff's E-bed

6  assignment; (3) Associate Warden H.M. Lackner, who approved denial of plaintiff's appeal; (4)

7  Correctional Counselor II E. Lamb, who reviewed and approved plaintiff's E-bed assignment and

8  later denied an appeal; (5) Dr. R.P. Galloway, who signed a Comprehensive Accommodation

9  Chrono (CAC) ordering ground floor cell housing for medical reasons, but later crossed out the

10  word "cell" in light of the housing policy and contrary to plaintiff's medical needs; (6) Dr. W.

11  Hashimoto, who also signed CACs with the word "cell" crossed out from the "ground floor cell"

12  accommodation; (7) Dr. R.M. Hawkins, who also signed CACs with the word "cell" crossed out

13  from the "ground floor cell" accommodation; (8) Health Care Manager Dr. S. Heatley and (9)

14  Chief Medical Officer Dr. C.J. Smith, both of whom endorsed and promulgated a special housing

15  assignment policy that encouraged the word "cell" to be stricken from CACs ordering ground

16  floor cell housing, in order to permit E-bed assignments that would otherwise be impermissible

17  for medical reasons.

18    Plaintiff represents that he learned the facts regarding the involvement of these nine

19  individuals during discovery after the case was remanded to this court from the Ninth Circuit.

20  LEGAL STANDARDS

21    The Federal Rules provide that leave to amend pleadings "shall be freely given when

22  justice so requires."  Fed. R. Civ. P. 15(a).  "[T]his policy is to be applied with extreme

23  liberality."  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)

24  (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987)).[2]

25  ////

26  [2] The liberal policy of allowing amendment of pleadings under Rule 15(a) applies when the

27  amended pleadings do not exceed scheduling order deadlines; otherwise Rule 16's requirement to show good cause would apply.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000).  Plaintiff filed the present motion to amend on the last day for any motion to join

28  additional parties.  Accordingly, no showing of good cause under Rule 16 is required.

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Foman v. Davis, 371 U.S. 178, 182 (1962).

Of the factors the district court must consider, prejudice to the opposing party carries the greatest weight.  DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186-87 (9th Cir.1987).  Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

Undue delay, without more, is insufficient to justify denying a motion to amend.  DCD Programs, 833 F.3d at 186.  The futility of amendment, on the other hand, can justify denial of leave to amend even in the absence of prejudice.  Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) (citing Outdoor Systems, Inc. v. City of Mesa, 887 F.2d 604, 614 (9th Cir. 1993)); Steckman v. Hart Bewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal. . .") (citations omitted).  Amendment is futile, inter alia, where the applicable statute of limitations bars the proposed amendments.  See Deutsch v. Turner Corp., 324 F.3d 692, 718 n.20 (9th Cir. 2003); Platt Elec. Supply, Inc. v. Eoff Elec., Inc., 522 F.3d 1049, 1060 (9th Cir. 2008).

## DISCUSSION

### I.    Overview

Defendants oppose the motion to amend on grounds that the claims against the nine additional defendants are time-barred, rendering amendment futile.  Because the timeliness issue is dispositive, defendants' independent arguments regarding prejudice and other Foman factors

5

1    need not be addressed.

2        II.    Statute Of Limitations

3        Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of

4    limitations for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 265 (1985); Jones v.

5    Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  In California, a two-year statute of limitations applies.

6    See Cal. Code Civ. P. § 335.1; Jones, 393 F.3d at 927.  The federal court also apples the forum

7    state's law regarding tolling, including equitable tolling when not in conflict with federal law.

8    Hardin v. Straub, 490 U.S. 536, 537-39 (1989); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir.

9    1999), cert. denied, 529 U.S. 1117 (2000).  California provides that when a litigant is

10   incarcerated, the applicable limitations period is tolled for two years on grounds of "disability."

11   Cal. Code Civ. P. § 352.1(a).  This tolling provision operates to delay the running of the

12   limitations period, effectively extending the two-year personal injury limitations period to four

13   years for inmates.  See Carlson v. Blatt, 87 Cal. App. 4th 646, 650 (2001) (imprisonment tolls

14   running of limitations period for two years from accrual of cause of action); Fink, 192 F.3d at 914

15   (same); Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir. 1999) (same).  Accordingly,

16   California inmates have a total of four years from the accrual of a cause of action to file a

17   complaint.

18       The Ninth Circuit has held that prisoners are entitled to equitable tolling of the statute of

19   limitations while completing the mandatory exhaustion process.  Brown v. Valoff, 422 F.3d 926,

20   942-43 (9th Cir. 2005).  In this case, the parties agree that plaintiff exhausted his administrative

21   remedies when his appeal was denied at the Director's level on May 28, 2009.  Assuming the

22   four-year total limitations period began to run at that time, it expired on May 28, 2013.  The

23   motion to amend, with proposed third amended complaint, was filed on February 18, 2014 –

24   almost nine months late.

25       The "relation back" provision of Fed. R. Civ. P. 15(c) does not apply to § 1983 claims.

26   Merritt v. County of Los Angeles, 875 F.2d 765, 768 (9th Cir. 1989).  Rather, state law

27   determines whether an amendment outside the limitations period may be deemed timely.  Id.; see

28   also Wilson, 471 U.S. at 269 (application of limitations rules governed by state law).  Plaintiff

1  presents several theories for the timeliness of his claims against newly-added defendants.  The

2  court addresses these in turn.

3      III.     Substitution Of Named For Previously Unnamed Defendants

4          Under California law, a plaintiff who names a Doe defendant in a complaint has three

5  years to discover the defendant's identity and amend the complaint accordingly.  Lindley v.

6  General Elec. Co., 780 F.2d 797, 799 (9th Cir. 1986); Cal. Code Civ. Proc. §§ 474, 583.210.

7  Cal. Code Civ. Proc. § 474 provides that "[w]hen the plaintiff is ignorant of the name of a

8  defendant, he must state that fact in the complaint … and such defendant may be designated in

9  any pleading or proceeding by any name, and when his true name is discovered, the pleading or

10  proceeding must be amended accordingly. . . ."[3]  When a defendant is brought in by amendment

11  substituting his name for a Doe defendant pursuant to § 474, he "is considered a party to the

12  action from its commencement for purposes of the statute of limitations."  Barrows v. American

13  Motors Corp., 144 Cal. App. 3d 1, 7 (1983).  In other words, amendments to substitute a named

14  for a previously unnamed defendant relate back to the original complaint.

15          This state law regime applies in federal court even when local rules prevent the filing of

16  an initial complaint naming Doe defendants, as long as plaintiff satisfies "the substantive criteria

17  of California's limitations scheme that would otherwise have been satisfied through 'Doe'

18  allegations."  Rumberg v. Weber Aircraft Corp., 424 F. Supp. 294, 298 (C.D. Cal. 1976).  The

19  Ninth Circuit has adopted Rumberg as the law of the circuit.  Lindley, 780 F.2d at 800.  Under

20  Lindley and Rumberg, an amendment substituting a named defendant for a previously unnamed

21  defendant is timely if (1) the initial complaint either named fictitious defendants or alleged that

22  the identities of certain defendants was unknown to plaintiff at the time of filing, and (2) the

23  amendment is made within three years.  See Lindley, 780 F.2d at 801-802; Rumberg, 424 F.

24  Supp. at 298.

_____

25  [3] Under Cal. Code Civ. Proc. § 583.210(a) (previously § 581a), "The summons and complaint

26  shall be served upon a defendant within three years after the action is commenced against the
defendant.  For the purpose of this subdivision, an action is commenced at the time the complaint

27  is filed."  Taken together with § 474, this rule "effectively extend[s] the . . . statute of limitations
three years past the commencement of the action as to defendants named as Does."  Lindley, 780

28  F.2d at 800 (citing Rumberg, supra).

1   Plaintiff contends that the nine new defendants should be considered parties to the action

2   from its commencement for purposes of the statute of limitations, pursuant to Cal. Code Civ.

3   Proc. § 474.  The argument fails for the simple reason that plaintiff never named Doe defendants

4   or otherwise indicated in a complaint filed within the limitations period that he wished to proceed

5   against defendants whose identities were unknown to him.  The § 474 substitution procedure has

6   no application where a plaintiff seeks to add new defendants, rather than identifying defendants

7   who were previously unnamed or fictitiously named.  See Kralow Co. v. Sully-Miller, 168 Cal.

8   App. 3d 1029, 1035-36 (1985) (relation back doctrine inapplicable where plaintiff attempts to

9   relate amendments naming new defendants back to complaint that did not make allegations

10  against those defendants or name any Doe defendants); Anderson v. Allstate, 630 F.2d 677, 683

11  (9th Cir. 1980) ("Under California law, if a defendant is added to an amended complaint as a new

12  defendant, and not as a Doe defendant, the amendment does not relate back to the time of the

13  original complaint.").

14  Plaintiff relies on the Ninth Circuit's recognition that "California's policy in favor of

15  litigating cases on their merits requires that the fictitious name statute be liberally construed."

16  Lindley, 780 F.2d at 801.  Liberality of construction, however, does not mean the wholesale

17  suspension of standards or the application of the statute outside the context it was devised to

18  address.  See Fireman's Fund Ins. Co. v. Sparks Const. Inc., 114 Cal. App. 4th 1135, 1142-43

19  (2004) (§ 474 is to be liberally construed, but its requirements are mandatory).  Strict technical

20  compliance with § 474's pleading requirements cannot be expected of a federal litigant because

21  of the differences between state and federal practice.  Rumberg, 424 F. Supp. at 298.  The benefit

22  of the statute is nonetheless limited to circumstances in which a plaintiff seeks to substitute a

23  named defendant for a previously unnamed defendant.  Fireman's Fund, 114 Cal. App. 4th at

24  1142-43 (§ 474 does not authorize relation back of Doe amendments where operative complaint

25  lacks Doe allegations).

26  Plaintiff's third amended complaint does not identify defendants who were previously

27  unnamed or fictitiously-named, it adds entirely new defendants.  The operative second amended

28  complaint does not state causes of action against the individuals plaintiff now seeks to add, or

8

allege that plaintiff was ignorant of their names.  See Fireman's Fund, 114 Cal. App. 4th at 1142-43.  Accordingly, plaintiff has not satisfied "the substantive criteria of California's limitations scheme that would otherwise have been satisfied through 'Doe' allegations."  Rumberg, 424 F. Supp. at 298.  The relation back rule codified in § 474 therefore cannot save plaintiff's claims against the new defendants from application of the statute of limitations.

       In the context of the § 474 issue, the parties debate at length whether plaintiff was actually ignorant of the new defendants and their involvement in plaintiff's E-bed assignment at the time the action was commenced and/or at the times the complaint was previously amended.  Actual ignorance of the identity of Doe defendants, or of the facts giving rise to a cause of action against them, is an additional requirement for application of § 474.  Rumberg, 424 F. Supp. at 297; Fireman's Fund, 114 Cal. App. 4th at 1143.  Because the statute does not apply for the reasons previously explained, however, the debate about when plaintiff knew or could have discovered the facts giving rise to his claims against the various new defendants is not germane to the § 474 analysis.  The California courts' broad interpretation of § 474's ignorance requirement, see Fuller v. Tucker, 84 Cal. App. 4th 1163, 1170 (2000), [4] does not expand the statute's reach beyond the fictitious-defendant context.

       IV.    California's "Saving Statute"

       Plaintiff argues next for application of Cal. Code Civ. P. § 355, which provides for commencement of a new action within one year of reversal on appeal.  Section 355 provides as follows:

              Reversal of judgment; limitation on new action

              If an action is commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal other than on the merits, a new action may be commenced within one year

_____

[4] "The phrase 'ignorant of the name of a defendant' is broadly interpreted to mean not only ignorant of the defendant's identity, but also ignorant of the facts giving rise to a cause of action against that defendant.  '[E]ven though the plaintiff knows of the existence of the defendant sued by a fictitious name, and even though the plaintiff knows the defendant's actual identity (that is, his name) the plaintiff is 'ignorant' within the meaning of the statute if [plaintiff] lacks knowledge of that person's connection with the case or with [plaintiff's] injuries…'"  Fuller, 84 Cal. App. 4th at 1170 (citations omitted).

9

1    after the reversal.

2        In <u>Wood v. Elling Corp.</u>, 20 Cal. 3d 353, 360-62 (1977), the California Supreme Court

3    held that the saving statute provides a renewed one-year limitations period in two situations.  The

4    first is where a judgment *for* plaintiff is reversed on appeal, as the statutory language

5    contemplates.  The second situation, first recognized in <u>Bollinger v. National Fire Ins. Co.</u>, 25

6    Cal. 2d 399 (1944), is where (1) the trial court erroneously granted a nonsuit; (2) dilatory tactics

7    on the part of the defendant had prevented disposition of the first action in time to permit timely

8    filing of a second action; and (3) plaintiff was diligent in pursuing his remedies.  <u>Wood</u>, 20 Cal.

9    3d at 361; <u>see also</u> <u>Allen v. Greyhound Lines, Inc.</u>, 656 F.2d 418, 421 (9th Cir. 1981).  Plaintiff

10   contends that the Ninth Circuit's reversal of this court's previous dismissal of the action brings

11   this case within the scope of the savings statute.

12       There are several problems with this theory, only one of which requires discussion.

13   Because the appeal in this case did not involve reversal of a judgment for plaintiff, the saving

14   statute applies only if all three of the <u>Wood</u>/<u>Bollinger</u> factors are satisfied.  Plaintiff cannot satisfy

15   the second such factor, that defendant's dilatory tactics caused the statute of limitations to expire

16   before plaintiff could timely file his claims against the new defendants.  The record in this case is

17   devoid of any evidence that defendants engaged in dilatory tactics that dragged out litigation of

18   the administrative exhaustion issue until after the statute of limitations had run.  Defendants'

19   motion to dismiss was brought only six weeks after service of the complaint, ECF No. 25, and

20   was decided with unusual alacrity.  There has been no showing that defendants unduly extended

21   the appellate process.  Without a showing of dilatory conduct on defendants' part, plaintiff's own

22   diligence does not entitle him to the benefit of Cal. Code Civ. P. § 355.  Accordingly, this

23   argument fails.[5]

24   V.    Equitable Tolling

25       As previously noted, the four-year limitations period applicable to this prisoner §1983

26

27   [5] The court also notes that the proposed Third Amended Complaint was filed more than a year
     after the Ninth Circuit issued its mandate.  Accordingly, amendment to add new claims and new
     defendants appears to be untimely even if plaintiff is entitled to the one-year limitations period
28   provided by § 355.

1    action includes a two-year period of equitable tolling that California provides by statute for the

2    "disability" of incarceration.  See Ellis v. City of San Diego, 176 F.3d at 1189.  As also noted, the

3    time during which plaintiff was pursuing his administrative remedies is excluded from the

4    calculation of the limitations period.  See Brown v. Valoff, 422 F.3d at 942-43.  As the result of

5    these equitable principles, plaintiff was free (at least as far as the statute of limitations is

6    concerned) to add new claims and new defendants for four years from the conclusion of his

7    administrative exhaustion process.  The parties agree that plaintiff's exhaustion process

8    concluded on May 28, 2009.  The limitations period accordingly expired on May 28, 2013, nine

9    months before the third amended complaint was presented to the court, absent an additional and

10   independent basis for tolling.

11           Plaintiff argues that he is entitled to additional equitable tolling under Daviton v.

12   Columbia/HCA Healthcare Corp., 241 F.3d 1131 (9th Cir. 2001) (en banc) and Cervantes v. City

13   of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).  In both Daviton and Cervantes, the court

14   applied California's equitable tolling doctrine to exclude from the limitations period the time that

15   non-prisoner plaintiffs were pursuing administrative actions and/or state court proceedings

16   against the defendants.[6]  Plaintiff Akhtar gains nothing by invoking California's tolling rule for

17   prior proceedings, because the Ninth Circuit independently provides equitable tolling in prisoner

18   cases for the time the inmate is exhausting his administrative remedies as required by the Prison

19   Litigation Reform Act.  Brown, 422 F.3d at 942-43.  The court has already excluded that time

20   from the limitations period as the parties agree is proper.  That exclusion is not enough to render

21   the claims against the nine new defendants timely.

22           Plaintiff also seeks additional equitable tolling for the time that the case was on appeal.

23

24   [6] Under California law, equitable tolling "reliev[es] plaintiff from the bar of a limitations statute
25   when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to
     lessen the extent of his injuries or damage."  Daviton, 241 F.3d at 1137 (citations omitted).
26   "[P]ursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's
     actions" satisfy the three-pronged standard set forth above, that is, 1) the defendants must have
27   had timely notice by the filing of the first claim; 2) defendants are not prejudiced "in gathering
     evidence for the second claim;" 3) plaintiff's conduct in the filing of the second [or amended]
28   complaint was reasonable and based on good faith.  Cervantes, 5 F.3d at 1275 (citations omitted).

1   The only authority he provides for equitable tolling pending appeal is Cal. Code Civ. P. § 355,

2   which does not apply for the reasons explained above.  An appeal is not a separate or parallel

3   proceeding within the meaning of the California equitable tolling rule recognized in Daviton and

4   Cervantes.  Nor is appeal of the district court's dismissal for non-exhaustion part of the

5   administrative exhaustion process for which tolling is authorized under Brown.  Plaintiff cites no

6   California statute or case law that provides for equitable tolling during the pendency of an appeal

7   outside the § 355 context.  The court's independent research has identified no such authority.

8           Plaintiff relies heavily on the general policy justifications for equitable tolling, noting the

9   Ninth Circuit's recognition that "[e]quitable tolling under California law 'operates independently

10  of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations

11  as necessary to ensure fundamental practicality and fairness."  Jones v. Blanas, 393 F.3d at 928

12  (quoting Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003)).  Plaintiff contends that it would

13  be fair and just to toll the statute of limitations because he did not learn the facts linking the nine

14  new defendants to his injuries until discovery was conducted following remand.  Plaintiff does

15  not, however, identify any California authority that specifically provides for equitable tolling

16  outside the particular contexts previously discussed (disability or pursuit of relief in another

17  forum).[7]  Plaintiff's reliance on federal standards for equitable tolling in contexts other than §

18  1983, including habeas corpus proceedings, is unavailing because California law governs the

19  timeliness inquiry in this § 1983 case.  See Hardin v. Straub, 490 U.S. at 538-39.

20          The court sympathizes with plaintiff's situation.  He initiated this action in pro per.

21  Counsel entered the case after judgment had been entered against plaintiff, and obtained a

22  reversal on appeal.  Upon remand, plaintiff did not undertake discovery regarding the merits of

23  

_____

24  [7] Jones, supra, involved application of the inmate disability tolling statute to a civil detainee.  The
    other cases cited by plaintiff for their sweeping dicta about the equities of tolling all involve

25  plaintiffs who pursued similar or alternative remedies consecutively in different forums.  As one
    California court has explained, the state's doctrine of equitable tolling was created by the

26  California Supreme Court to weave together three lines of cases, all of which involve plaintiffs
    who have several legal remedies and choose one reasonably and in good faith.  Collier v. City of

27  Pasadena, 142 Cal. App. 3d 917, 923 (1983).  These cases do not support plaintiff's contention
    that equitable tolling applies broadly outside the context of administrative exhaustion or other

28  pursuit of remedies.

1   the case until after amending the complaint, defeating a motion to dismiss, successfully moving to

2   substitute successors-in-interest for a deceased defendant, and conducting discovery into the

3   identities of the successors-in-interest.  Thereafter, the court sua sponte ordered a Pretrial

4   Scheduling Conference under Fed. R. Civ. P. 16 and Local Rule 240,[8] and subsequently issued a

5   Scheduling Order on August 26, 2013.  ECF No. 85.  It was during the course of discovery

6   pursuant to the August 2013 Scheduling Order that plaintiff discovered the new claim and new

7   defendants presented in the proposed Third Amended Complaint.  Discovery thus occurred, and

8   the facts linking additional defendants to plaintiff's injuries were identified, after the statute of

9   limitations had already expired.

10      It must be noted, however, that nothing prevented plaintiff from conducting investigation,

11   including a review of petitioner's central file and medical file, or seeking discovery or a Rule

12   26(f) conference, prior to expiration of the limitations period.  Promptly upon remand, prior to the

13   expiration of the limitations period, plaintiff was provided the opportunity to amend his

14   complaint.  ECF No. 47.  That was the time for plaintiff to consider the application of the statute

15   of limitations and to conduct any inquiries necessary to develop and plead his case.

16      The unfortunate effect on plaintiff of this procedural history does not entitle him to

17   equitable tolling under California law.  As the California Supreme Court has acknowledged:

18          [A] statute of limitations. . . operates conclusively across-the-board.
            It does so with respect to all causes of action, both those that do not
19          have merit and also those that do. That it may bar meritorious
            causes of action as well as unmeritorious ones is the price of the
20          orderly and timely processing of litigation - - - a price that may be
            high, but one that must nevertheless be paid.
21

22   Norgart v. Upjohn, 21 Cal. 4th 383, 410 (1999) (internal quotation marks and citations omitted).

23                                    CONCLUSION

24      For all the reasons explained above, the court concludes that amendment is futile because

25   the claims against the new defendants are untimely.  Accordingly, IT IS HEREBY

26   _____

27   [8] The case had been proceeding on remand as a "prisoner action" exempt from Rule 16, despite
     the fact that plaintiff was represented by counsel.  See L.R. 101 (defining "prisoner action" as one
     brought by an inmate in pro per); L.R. 240(c)(8) (exempting prisoner actions from the mandatory
28   scheduling order requirement of Fed. R. Civ. P. 16(b)).

1 | RECOMMENDED that plaintiff's motion to file a third amended complaint (ECF No. 90) be

2 | denied.

3 | These findings and recommendations are submitted to the United States District Judge

4 | assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5 | after being served with these findings and recommendations, any party may file written

6 | objections with the court and serve a copy on all parties.  Such a document should be captioned

7 | "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

8 | objections shall be filed and served within fourteen days after service of the objections.  The

9 | parties are advised that failure to file objections within the specified time may waive the right to

10 | appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11 | DATED: May 13, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

14